IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAYLEIGH DUMAS,                    )
                                   )
              Plaintiff,           )        2:23-CV-51
                                   )
        v.                         )
                                   )
YOUSSIF ALMUSAWI, et al.,          )
                                   )
              Defendants.          )

## OPINION

**J. Nicholas Ranjan, United States District Judge**

On July 2, 2022, Plaintiff Kayleigh Dumas was filming police officers with her cellphone in the parking lot of a Target in Pittsburgh, Pennsylvania, as they worked to dispel a crowd of unruly juveniles. When Defendant Officer Brendan Orris raised a can of pepper spray and announced that he would spray the juveniles if they did not disperse, Ms. Dumas rushed up to him to film his badge number. She ignored his directive to retreat and flailed her arms overhead. As a result, several police officers, including Defendant Officers Orris and Almusawi, tackled and arrested her. She was charged with two counts of aggravated assault, one count of resisting arrest, one count of obstruction, and one count of disorderly conduct. All charges were eventually dismissed.

Relying on ten cameras capturing the event, Ms. Dumas brought various federal civil rights claims under 42 U.S.C. § 1983, alleging that Defendants had no probable cause to takedown, arrest, and charge her. Moreover, she says that Defendants retaliated against her for exercising her First Amendment right to film police officers performing their duty in a public place. Defendants move for summary

judgment, arguing that the videos actually show that they are entitled to and shielded by qualified immunity.

After careful review, the Court concludes that Defendants are right. The cameras here didn't lie, and Ms. Dumas cannot point to any material facts to suggest otherwise. The videos all clearly show the officers acting within the parameters of Ms. Dumas's clearly established rights. Based on this evidence, the Court will grant summary judgment in Defendants' favor.

## BACKGROUND

The material facts are not in dispute. On the evening of July 2, 2022, police officers for the City of Pittsburgh Bureau of Police responded to a call from Officer Andrew Tantanella at the Target store in the East Liberty neighborhood of Pittsburgh, Pennsylvania. ECF 57-6, pp. 2-3. Officer Tantanella had observed two juveniles fighting. *Id.* One of the kids pulled a firearm from his waistband, which resulted in Officer Tantanella detaining him. *Id.* While Officer Tantanella detained the suspect, a crowd of juveniles gathered in the parking lot, leading Officer Tantanella to call for backup. *Id.*

Multiple officers, including Defendant Officers Brendan Orris and Youssif Almusawi, responded and appeared on scene to control and disperse the crowd. ECF 56, p. 3; ECF 62, p. 3; ECF 57-7. Ms. Dumas was driving in the vicinity and noticed that police were descending on the Target, so she followed them into the parking lot to "be a witness" to whatever activity was occurring there. ECF 57-5, 17:13-24, 20:21-21:11.

At this point, multiple cameras—including the Target parking lot CCTV camera, the officers' bodyworn cameras, and Ms. Dumas's cellphone—captured the events. The juveniles converged near the parking-lot entrance of the Target, and the officers attempted to break up the crowd. ECF 57-20, 55:30-56:08. Ms. Dumas

followed and positioned herself several feet away from the crowd and officers.  *Id.*, 56:09-56:28.[1]  She began filming the scene with her phone camera.  *Id.*, 56:29-56:59.  Her cellphone video shows that the officers ignored her while she was filming.  ECF 57-16, 0:00-0:29.

Officer Orris made his way to the crowd.  ECF 57-9, 5:08-5:18; ECF 57-16, 0:30.  He held a can of pepper spray above his head and yelled to the crowd, "I'm going to spray you," and ordered the crowd to disperse.  *Id.*  Ms. Dumas left her position of safety and rushed up to Officer Orris with her cellphone to film his badge number, impeding his path forward.  ECF 57-9, 5:18-5:21; ECF 57-16, 0:30-0:33.  She held the phone inches from Officer Orris's face.  *Id.*; *see also* ECF 57-5, 31:2-7.



Below is a view from another angle.  ECF 57-12, 4:29.



---

[1] In the Target CCTV video (ECF 57-20), Ms. Dumas can be seen wearing a black and yellow shirt and COVID-19 facemask and crosses the top left of the screen, near the Target entrance beginning at 56:09.  She is easily identifiable throughout the video.

Officer Orris directed Ms. Dumas to back away from him, and she complied at first.  ECF 57-9, 5:20-5:26.  But Ms. Dumas was caught between Officer Orris and some trash cans, and she stopped backing up.  *Id.*, 5:26-5:28; ECF 57-10, 2:13-2:15.  Ms. Dumas raised and flailed her left hand over her head.  *Id.*



Several officers, including Officer Almusawi, closed on Ms. Dumas as the distance between her and Officer Orris shrank.  *Id.*  Officer Orris pushed Ms. Dumas away to create space, while saying, "Can you get back, please.  Get out of the way." *Id.*  Due to the push, Ms. Dumas bumped into a juvenile passing behind her and the trash cans.  ECF 57-10, 2:16-2:18.  Then came the pivotal moment: the push from the front and the juvenile bumping up against her from behind caused Ms. Dumas to pull back her cellphone-holding hand in a cocking-type motion, as if she were about to use that hand to hit Officer Orris.  *Id.*, 2:18.  Officer Almusawi caught Ms. Dumas's hand and pushed it away.  *Id.*, 2:18-2:19.



At the same time, Ms. Dumas pulled and raised her hand overhead in a way that she could strike Officer Orris or Officer Almusawi.  *Id.*



Officer Almusawi initiated a takedown of Ms. Dumas.  *Id.*, 2:19.  Ms. Dumas began flailing her limbs, and other officers joined in the takedown.  *Id.*, 2:19-2:20. During the takedown, Ms. Dumas kicked off Officer Almusawi's bodycam.  ECF 57-13, 2:53-3:00 (Officer Almusawi asks someone to pick up bodycam, and Officer Postell retrieves it); ECF 57-19, 4:21-4:23 (bodycam slides across the ground).  Once Ms. Dumas was on the ground, the officers attempted to put her hands behind her back and handcuff her, but Ms. Dumas had pulled her hands beneath her, hindering them. ECF 57-5, 51:17-52:1; ECF 57-9, 5:43-5:50; ECF 57-10, 2:30-2:38; ECF 57-13, 2:50.



The officers eventually handcuffed Ms. Dumas and arrested her.  ECF 57-10, 3:17-3:33.  Another individual filmed the arrest from a safe distance, and he was directed to leave the parking lot by an officer.  ECF 57-20, 57:33-57:54.

Ms. Dumas was placed in a police vehicle where she received brief medical attention for pain in her head from the takedown.  ECF 57-5, 59:5-60:9.  Officers brought Ms. Dumas to Allegheny County Jail, where Officer Almusawi charged her with two counts of aggravated assault, one count of resisting arrest, one count of obstruction of administration of law enforcement, and one count of disorderly conduct.  ECF 57-8.  All charges were eventually dismissed.  ECF 57-17.

Ms. Dumas brought four claims under 42 U.S.C. § 1983 against Officers Orris and Almusawi, as well as Officer Ronald Postell, Officer Joseph Mangiarelli, and a John Doe police officer, for their participation in her takedown, arrest, and prosecution.  ECF 1.  Specifically, she alleged that the officers used excessive force in conducting the takedown in violation of the Fourth Amendment (Count II), and that the officers falsely arrested and charged her in retaliation for filming the encounter in the Target parking lot, in violation of the First and Fourth Amendments, as made applicable to the States under the Fourteenth Amendment (Counts I, III-IV).  *Id.*  She also sued Allegheny County for violating the Pennsylvania Mental Health Procedures Act, because the magistrate judge required that Ms. Dumas undergo a behavior clinic as a condition of her release on bail (Count V).  *Id.*

This Court dismissed the County and Officer Mangiarelli from the case at the motion-to-dismiss stage.  ECF 30; ECF 31.  Following discovery, the parties stipulated to the dismissal of Officer Postell and the John Doe officer, as well as the dismissal of Count II against Officer Almusawi.  ECF 52.

Four claims now remain: (1) false arrest, against Officers Orris and Almusawi; (2) use of excessive force, against Officer Orris; (3) malicious prosecution, against

Officer Almusawi[2]; and (4) First Amendment retaliation, against Officers Orris and Almusawi.  Defendants moved for summary judgment (ECF 55), and Ms. Dumas opposed the motion (ECF 62).  The motion is now ready for disposition.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up).  The moving party bears the initial burden to show the absence of a genuine dispute of material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" summary judgment is improper. *Id.* (cleaned up).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment "is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings,

---

[2] Ms. Dumas dismissed her malicious-prosecution claim against Officer Orris in her opposition brief.  ECF 62, p. 25, n.9.

legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (cleaned up).

But there is an important caveat to this standard where, as here, the record includes video footage of the events in question. When video exists, and there is no allegation that the video misrepresents "what actually happened[,]" the Court need not view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Instead, the Court must "view the facts in the light depicted by the videotape, especially when it blatantly contradicts the nonmovant's narrative." *Bland v. City of Newark*, 900 F.3d 77, 86 n.7 (3d Cir. 2018) (cleaned up). More on this below.

## DISCUSSION & ANALYSIS

Ms. Dumas brings her claims for false arrest, excessive force, malicious prosecution, and First Amendment retaliation pursuant to 42 U.S.C. § 1983, which creates a private cause of action for violations of federal law by state officials. 42 U.S.C. § 1983. To prevail, she "must prove that she suffered the deprivation of a constitutional or federal right[] by a person acting under color of state law." *Szalabawka v. Russo*, No. 09-88, 2011 WL 7776786, at *4 (W.D. Pa. Sept. 28, 2011) (McLaughlin, J.) (cleaned up).

In doing so, she must overcome a steep hurdle—qualified immunity. This doctrine "shields governmental officials from suit and from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mack v. Yost*, 63 F.4th 211, 221 (3d Cir. 2023) (cleaned up). "Officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of

their conduct was clearly established at the time." *Richter v. Pa. State Police*, No. 15-775, 2018 WL 2984966, at *7 (W.D. Pa. June 14, 2018) (Bissoon, J.) (cleaned up).

Defendants argue that no reasonable jury could find on this record that they violated Ms. Dumas's constitutional rights, and even if they did, the rights were not clearly established. ECF 56, p. 1; ECF 63, p. 1. If the Court agrees with Defendants on one or both points—the constitutional question or the "clearly established right" question—then Defendants are entitled to qualified immunity.

Courts have discretion on the order in which to address the qualified-immunity prongs outlined above. *Camreta v. Greene*, 563 U.S. 692, 705 (2011). The Supreme Court generally recommends resolving the "clearly established" prong first to avoid "ruling on the (perhaps difficult) constitutional claim the plaintiff has raised." *Id.* The Court follows that recommendation, and proceeds in reverse order.

## I.     Defendants did not violate any clearly established rights.

The second qualified-immunity prong asks whether the relevant right was clearly established at the time of the alleged violation. In analyzing this prong, the Court proceeds in two steps: first, by "defin[ing] the right allegedly violated at the appropriate level of specificity[,]" and second, "ask[ing] whether that right was clearly established at the time of its alleged violation." *Mack*, 63 F.4th at 228 (cleaned up).

The first step, defining the right, is "essential." *Id.* "The Supreme Court has repeatedly emphasized that clearly established law should not be defined at a high level of generality." *Weimer v. Cnty. of Fayette, Pennsylvania*, 972 F.3d 177, 190 (3d Cir. 2020) (cleaned up). The contours of the right must be "sufficiently definite such that any reasonable official in the defendant's shoes would have understood that he was violating it." *Perez v. Teresinski*, No. 22-1962, 2023 WL 1879236, at *2 (3d Cir. Feb. 10, 2023) (cleaned up). This means that "general proposition[s]" will not suffice. *Id.* "A rule is too general if the unlawfulness of the official's conduct does not follow

immediately from the conclusion that the rule was firmly established." *Weimer*, 972 F.3d at 190 (cleaned up).  In other words, the Court must apply "a high degree of specificity" in defining the right, such that it can answer "the crucial question whether [Defendants] acted reasonably in the particular circumstances that [they] faced." *Mack*, 63 F.4th at 228 (cleaned up).

"Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated a clearly established statutory or constitutional right." *Kitko v. Young*, No. 10-189, 2013 WL 5308016, at *9 (W.D. Pa. Sept. 20, 2013) (Gibson, J.) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997)), *aff'd*, 575 F. App'x 21 (3d Cir. 2014).  To meet her burden, Ms. Dumas must point "to factually analogous Supreme Court precedent, as well as binding opinions from" the Third Circuit that were available at the time of her arrest.  *Jefferson v. Lias*, 21 F.4th 74, 81 (3d Cir. 2021) (cleaned up).  If none exist, she may also look to a "robust consensus of cases of persuasive authority in the Courts of Appeals[]" and the district courts from the Third Circuit or elsewhere.  *Id.*  Ms. Dumas doesn't need to produce an exactly equivalent case, but must identify "sufficiently analogous cases that should have placed a reasonable official in [Defendants'] position on notice that [their] actions were unlawful." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 249 (3d Cir. 2016).  The Court concludes that Ms. Dumas has not carried her burden.

Ms. Dumas's brief focuses mainly on raising a factual dispute about the merits of the underlying constitutional violations, without devoting much argument to

defining the relevant rights.  *See generally* ECF 62.  That said, the Court reads her brief as defining the relevant rights as follows:

- **First Amendment retaliation**: the "right to record police officers conducting their official duties in public." *Id.* at 25.

- **Excessive force**: the right to be free from force where the individual "is compliant and poses no ongoing threat to [herself] or others, or who is not resisting arrest, even if [she] was initially non-compliant." *Id.* at 28 (cleaned up).

- **False arrest and malicious prosecution**: the "right to be free from . . . arrest [and prosecution] except upon probable cause under the Fourth Amendment[.]" *Id.* at 25.

Each of these framings misses the mark because they are too general—the Court cannot answer whether Defendants acted reasonably in the particular circumstances they faced during the takedown, arrest, and charging of Ms. Dumas. *See, e.g.*, *Davis v. Webster*, No. 17-273, 2018 WL 1157990, at *2 (W.D. Pa. Mar. 2, 2018) (Hornak, J.) (rejecting plaintiff's general formulation of right to be free from warrantless blood draw absent exigent circumstances under Fourth Amendment because "[t]he dispositive question is whether the violative nature of ***particular*** conduct is clearly established." (cleaned up and emphasis original)); *Martin for Est. of Webb v. City of Newark*, 762 F. App'x 78, 84 (3d Cir. 2018) (framing issue as whether "an officer uses excessive force when he shoots at a driver who starts a car despite having been warned not to and does so while the officer is positioned between the car and its open driver's side door" instead of "general" right to be free from deadly force absent probable cause that suspect poses threat of death or serious injury).

Moreover, Ms. Dumas's framings fail to capture what actually happened.  But thanks to the ten clear and undisputed videos depicting the unfolding of events on

July 2, 2022, the Court can and must view the entire incident and define the contours of the relevant rights based on what is depicted. *El v. City of Pittsburgh*, 975 F.3d 327, 338 (3d Cir. 2020) ("[T]he presence of the video in the record does not permit us to embark upon our own factfinding exercise.").

As recounted above, the videos show that Ms. Dumas was standing off to the side and filming the officers near the entrance of the Target, without any interference from the officers. But once Officer Orris raised his can of pepper spray and ordered the crowd to disperse, Ms. Dumas left her zone of safety and inserted herself into an active scene. By Ms. Dumas's own admission, she did so to prevent Officer Orris from carrying out his official duty. ECF 57-5, 29:5-11. The videos show that she succeeded, as Officer Orris's attention was on her, not the crowd he was trying to dispel. But even then, Officer Orris did not touch Ms. Dumas or prevent her from filming. Instead, he ordered her to retreat—she took one step back, stopped complying, and raised her left arm overhead. At that point, Officer Orris shoved Ms. Dumas. Ms. Dumas then raised her right arm above her head in a threatening motion, such that she could strike Officer Orris or Officer Almusawi. Then—and only then—did the officers take Ms. Dumas down, and eventually arrest and charge her.

Given the undisputed and clear video evidence, and applying the circumstances depicted, the Court formulates the three rights as follows:

- **First Amendment retaliation**: the right of an individual who is filming police officers performing their official duties to be free from arrest and prosecution when the individual is filming in close proximity to the officers, interferes with and impedes an officer's ability to disperse a crowd pursuant to his official duty, ignores his commands, raises her arm in a threatening manner, and resists arrest. *See, e.g.*, *Grant v. City of Philadelphia*, 637 F. Supp. 3d 247, 267 (E.D. Pa. 2022), *aff'd*, No. 22-

3200, 2024 WL 1328312 (3d Cir. Mar. 28, 2024); *Karns v. Shanahan*, 879 F.3d 504, 522 (3d Cir. 2018).

- **Excessive force**: the right of an individual to be free from non-deadly force when the individual interferes with and impedes an officer's ability to disperse a crowd pursuant to his official duty, ignores his commands, raises her arm in a threatening manner, and resists arrest. *See, e.g.*, *Santini v. Fuentes*, 739 F. App'x 718, 721 (3d Cir. 2018); *Mileham v. Conley*, No. 20-116, 2023 WL 8031818, at *7 (W.D. Pa. Nov. 20, 2023) (Stickman, J.).

- **False arrest and malicious prosecution**: the right to be free from arrest and prosecution for aggravated assault, resisting arrest, and disorderly conduct absent probable cause that the conduct at issue was unlawful and supported by the charges.[3]

With the relevant rights established, the Court must ask whether the rights were clearly established at the time of their alleged violation, *i.e.*, whether the rights were sufficiently clear that a reasonable official would understand that what he is doing violates those rights. *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021).

The first right is not clearly established. While the Third Circuit has acknowledged a right to record "police officers conducting official police activity in public areas[,]" that right is "not absolute" and may not be protected if "a person's

---

[3] With respect to the false-arrest and malicious-prosecution claims, the constitutional rights associated with these claims are general in a certain sense, but narrowed and framed by the conduct and circumstances at issue. So, here, the question is whether there was probable cause to arrest and charge Ms. Dumas for aggravated assault resisting arrest, and disorderly conduct based on the conduct described above. *See, e.g.*, *Hunt v. Smith*, No. 20-464, 2022 WL 19977730, at *9 (M.D. Pa. Nov. 3, 2022), *report and recommendation adopted*, No. 20-464, 2023 WL 4207446 (M.D. Pa. June 27, 2023), *aff'd*, No. 23-2362, 2024 WL 747238 (3d Cir. Feb. 23, 2024); *Gerhart v. Energy Transfer Partners, L.P.*, No. 17-1726, 2018 WL 6589586, at *21 (M.D. Pa. Dec. 14, 2018).

recording interferes with police activity[.]" *Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3d Cir. 2017). The activity here interfered with official police activity, and Ms. Dumas does not point to, and this Court cannot find, an analogous case to support the idea that she had a First Amendment right to film officers in a manner that impeded their efforts to restore order. *See Fleck v. Trs. of Univ. of Pa.*, 995 F. Supp. 2d 390, 408 (E.D. Pa. 2014) ("there was then no clearly-established First Amendment right in our Circuit to film police activity where, as here, the plaintiffs actively impeded efforts to restore public order[]" and refused to comply with police directives, which officer "took as a threat").

The Court reaches the same conclusion for the second right. True, there is a clearly established right under the Fourth Amendment to be free from excessive force. *E.g.*, *Precois v. Dilollo*, No. 13-6279, 2015 WL 8513561, at *3 (D.N.J. Dec. 10, 2015). But that framing isn't particularized enough. *Sholtis v. City of Pittsburgh*, No. 2:19-332, 2021 WL 5144432, at *8 (W.D. Pa. Nov. 4, 2021) (Stickman, J.). The specific right at issue is the right to be free from non-deadly force when the individual interferes with and impedes an officer's ability to disperse a crowd pursuant to his official duty, ignores his commands, raises her arm in a threatening manner, and resists arrest, and Ms. Dumas hasn't provided (and the Court cannot otherwise find) caselaw clearly establishing that right. The closest that Ms. Dumas gets is *Sholtis v. City of Pittsburgh*. ECF 62, p. 28. This Court defined the right in that case as "the right of an individual not to be tased when he is not suspected of a serious crime, he does not pose an immediate threat, and he is not actively resisting arrest." *Sholtis*, 2021 WL 5144432, at *8. Simply reading that language shows that *Sholtis* is not relevant to Ms. Dumas's case.

The same holds true for the third right. As discussed below, the charges here were all supported by Ms. Dumas's conduct, as captured on film. She may have a

general right to be free from arrest and prosecution absent probable cause, but not when there is undisputed video evidence of probable cause to support the charges. *Grant*, 637 F. Supp. 3d at 268 (no clearly established right to be free from retaliatory or non-retaliatory arrest where arrest is supported by probable cause); *cf. Rector v. Baca*, No. 13-3116, 2014 WL 4244345, at *9 (C.D. Cal. Aug. 25, 2014) ("There is no clearly established right not to be arrested pursuant to a warrant for a crime the defendant committed.").

Because the relevant rights were not clearly established at the time, the Court concludes that Defendants are entitled to qualified immunity.

## II. The undisputed video evidence confirms that there was no constitutional violation.

Ms. Dumas's claims also fail under the first prong of the qualified immunity analysis. Even applying Ms. Dumas's broad and general framing, the undisputed video evidence shows that no reasonable jury could find that Defendants violated her First or Fourth Amendment rights. The false-arrest, malicious-prosecution, and First Amendment retaliation claims come up short because the arrest and charges were supported by probable cause. The excessive-force claim fails because Officer Orris's use of force was objectively reasonable under the circumstances, as depicted by the video evidence.

### A. Probable cause existed to support the arrest of and charges against Ms. Dumas.

To succeed on her false-arrest and malicious-prosecution claims, Ms. Dumas must show the absence of probable cause. *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (claim for false arrest requires showing that arrest was made without probable cause); *id.* at 203 (claim for malicious prosecution requires proof that proceeding was initiated without probable cause). "The probable cause analysis is the same for § 1983 claims for false arrest and malicious prosecution." *Kessler v.*

*Borough of Frackville*, No. 17-2231, 2018 WL 2113648, at *4 (M.D. Pa. May 8, 2018). Thus, both claims "will necessarily fail if probable cause existed for any one of the crimes charged against [Ms. Dumas]." *Harvard*, 973 F.3d at 199 (cleaned up); *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021) (existence of probable cause for any one offense defeats claim for malicious prosecution).

"Probable cause exists if there is a fair probability that the person committed the crime at issue.  An officer has probable cause to arrest a person when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Harvard*, 973 F.3d at 199-200 (cleaned up).  This standard "does not depend on the actual guilt or innocence of the arrestee" and must be assessed at the time of arrest, not in hindsight.  *Szalabawka*, 2011 WL 7776786, at *5.  "Furthermore, whether the arresting officer acts in good faith or in bad faith in effectuating the arrest is irrelevant."  *Id.*  The Court must make this assessment based on the totality of the circumstances.  *Harvard*, 973 F.3d at 200.

The undisputed video evidence shows that probable cause existed at each step to arrest Ms. Dumas and file all charges against her.

Beginning with aggravated assault, an individual commits aggravated assault if he or she "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.]"  18 Pa. C.S. § 2702(a)(3).  As shown in the footage, there is a moment when Ms. Dumas raised her phone-holding hand overhead in a threatening motion suggesting she could strike Officer Orris or Officer Almusawi.  ECF 57-10, 2:19.  This is the key moment in the entire course of events because, based on this motion and as depicted by the video, an officer could reasonably believe that Ms. Dumas was attempting to strike Officer Orris or Officer Almusawi while

performing their duties (*i.e.*, clearing the crowd).  And once Ms. Dumas raised her arm in this threatening manner, the officers had probable cause to take her down and charge her with one count of aggravated assault.  *See Campeggio v. Upper Pottsgrove Twp.*, No. 14-1286, 2014 WL 4435396, at *5 (E.D. Pa. Sept. 8, 2014) (probable cause for simple assault arose when plaintiff inadvertently kicked officer); *Smith v. United States*, 121 F. Supp. 3d 112, 120-22 (D.D.C. 2015) (Jackson, J.) ("virtually indisputable" that probable cause for assault existed based on video that showed defendant intentionally driving towards officer, such that reasonable officer would have felt defendant tried to hit him), *aff'd*, 843 F.3d 509 (D.C. Cir. 2016).

Ms. Dumas argues that there is no evidence that she struck any of the officers or was planning on doing so.  ECF 62, p. 24.  But, as noted above, attempt supports the charge of aggravated assault.  18 Pa. C.S. § 2702(a)(3).  And the video depicts sufficient and undisputed evidence that Ms. Dumas had moved her hands in a manner suggesting that she was attempting to strike the officers.

The same key moment when Ms. Dumas raised her arm, and the few just before it, also gave rise to probable cause for the obstruction of justice and disorderly conduct charges.  A person commits obstruction when he or she "intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act[.]" 18 Pa. C.S. § 5101.  "[A]ny interference with [an] officer" performing his official duties "would be interference with the administration of law." *Commonwealth v. Reed*, 851 A.2d 958, 964 (Pa. Super. Ct. 2004).  And a person commits disorderly conduct when "with intent to cause public inconvenience,

annoyance or alarm, or recklessly creating a risk thereof, he . . . engages in fighting or threatening, or in violent or tumultuous behavior[.]"  18 Pa. C.S. § 5503(a)(1).

Ms. Dumas's stepping into Officer Orris's path, refusing to comply with his directives, and raising her arm in that threatening manner all diverted Officer Orris's attention away from his official duty in order to address the threat presented by Ms. Dumas.  Thus, a reasonable officer could believe that Ms. Dumas had both obstructed the administration of law and engaged in disorderly conduct up to and including the moment she raised her right arm.

Probable cause for the remaining charges (resisting arrest[4] and a second charge for aggravated assault) arose following the takedown.  The videos show that Ms. Dumas hid her hands under her body to prevent the officers from cuffing them, and that she kicked Officer Almusawi's bodyworn camera off him.  ECF 57-9, 5:42-5:52; ECF 57-10, 2:25-2:36; ECF 57-13, 2:53-3:00 (Officer Almusawi asks someone to pick up bodycam, and Officer Postell retrieves it); ECF 57-19, 4:21-4:23 (bodycam slides across the ground).  Again, as shown by the footage, a reasonable officer could believe that Ms. Dumas tried to prevent the officers from arresting her and to cause them harm in doing so.  *Commonwealth v. Cuff*, No. 2160 MDA 2013, 2014 WL 10802678, at *8 (Pa. Super. Ct. Nov. 10, 2014) ("striking or kicking" officers during arrest sufficient to uphold conviction for resisting arrest).

Ms. Dumas argues that the question of probable cause must go to the jury because "a reasonable jury could credit her assertions over the Defendants and find that there was no probable cause to arrest her for" the various charges.  ECF 62, p. 22.  She specifically argues that probable cause falls away if the Court accepts her

---

[4] A person resists arrests when he or she with "the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa. C.S. § 5104.

characterization that Officer Orris "intentionally trapped her" by walking her into the trash cans at the Target entrance. *Id.* at 23.  But the Court doesn't need to credit Ms. Dumas's characterization.  The undisputed footage shows that Ms. Dumas inserted herself between Officer Orris and the trash cans, stopped complying with his command to retreat, thereby prompting Officer Orris to shove her to make space, and raised her hand above her head in a threatening manner.  That's all the evidence needed to support a finding of probable cause for the first three charges that led to the takedown and arrest, and reject Ms. Dumas's characterization in turn.  *Smith*, 610 F. App'x at 115 ("[W]here there are video recordings of the incidents in question, we need not adopt the non-movant's version of the facts if the recordings blatantly contradict the non-movant's version so that no reasonable jury could believe it." (cleaned up)).

Viewing the videos, the Court concludes that Defendants had a reasonable belief about the existence of probable cause to support each of the charges against Ms. Dumas.  Accordingly, the Court finds that Ms. Dumas's false arrest and malicious prosecution claims must fail.

> ### B. The existence of probable cause defeats Ms. Dumas's First Amendment retaliation claim, and Ms. Dumas hasn't pointed to a similarly situated individual to raise an exception to the probable-cause requirement.

The absence of probable cause also dooms Ms. Dumas's claim for First Amendment retaliation.

"To establish a First Amendment retaliation claim, a plaintiff must prove (1) that she engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Brantley v. Wysocki*, 662 F. App'x 138, 142 (3d Cir. 2016) (cleaned up).  But where, as here, "the plaintiff alleges that the particular act of retaliation is criminal prosecution . . . the plaintiff must plead and prove the absence of probable cause." *Id.* (cleaned

up).  And because probable cause existed for all the charges against Ms. Dumas, even assuming that she engaged in a constitutionally protected activity, her First Amendment retaliation claim fails by default.

Ms. Dumas argues that an exception to this rule should apply and save her claim.  She emphasizes that the officers didn't arrest "a single 'unruly' juvenile" at the scene, even though they engaged in almost the same conduct as Ms. Dumas.  ECF 62, pp. 25-27.  She says that the officers would normally exercise their discretion and decline to arrest and charge Ms. Dumas—the only reason they did so was because she was filming them.  *Id.* at 27.  Thus, she argues that the Court should discard the probable-cause requirement and ask the jury to resolve whether Defendants' behavior amounts to First Amendment retaliation.  *Id.*  The Court disagrees, as the juveniles are not appropriate comparators.

In addressing First Amendment retaliation based on "discretionary" criminal charges, the Supreme Court explained that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019).  So, Ms. Dumas must point to other people who engaged in similar behavior (impeding police, resisting arrest, etc.) who were not filming and who were not arrested.  She cannot do so.

Ms. Dumas argues that she is similarly situated to the juveniles because the juveniles were "repeatedly being told to leave by police officers," but didn't, and were "repeatedly being pushed back by police officers, but not obeying[.]"  ECF 62, p. 27.  But Ms. Dumas was taken down and arrested not because she refused to leave, but because she interfered with Officer Orris and raised her arm in that threatening manner, right in front of Officers Orris and Almusawi.  No evidence has been

presented that any juvenile took comparable action, or engaged in a comparable direct confrontation with officers.  In fact, the videos show that when Officer Orris ordered the juveniles to disperse, every single person complied—except for Ms. Dumas.  *See* ECF 57-20, 57:01-57:09.[5]

Ms. Dumas also points to statements that Officer Orris made about her after the incident ("That bitch definitely gets obstruction," and "She's gotta be a social justice warrior") to try to create a dispute of material fact.  ECF 57-9, 9:07-9:10, 15:50-54; ECF 62, p. 27.  But those statements are immaterial because the probable cause analysis is an objective one based on the circumstances at the time of arrest.  *Karns*, 879 F.3d at 522-23.

"Probable cause defeats a retaliatory arrest claim in all but the most narrow of exceptions[,]" and "[t]his case is not within those exceptions."  *Thomas v. Weiss*, No. 21-14554, 2024 WL 2830662, at *13 (D.N.J. June 4, 2024) (cleaned up).  Thus, summary judgment for Defendants is appropriate on the First Amendment retaliation claim.

### C.   The undisputed video shows that Officer Orris's use of force was reasonable under the circumstances.

Despite the presence of probable cause to support her arrest and charges, Ms. Dumas argues that Officer Orris used an unreasonable amount of force during the

---

[5] Somewhat tellingly, the parking lot CCTV footage shows that another individual filmed the officers taking down and arresting Ms. Dumas, but there is no evidence in the record that this individual was also arrested and charged.  ECF 57-20, 57:32-57:55.  Unlike Ms. Dumas, this individual filmed from a distance, complied when an officer told him to clear the area, and did not make any threatening motions with his arms.  *Id.*  That another individual exercised the same First Amendment right that Ms. Dumas asserts without being arrested and charged underscores that Defendants were not "exploiting [their] arrest power as a means of suppressing [Ms. Dumas's] speech[,]" but were "trying to control the situation and arrested the [only] actor who refused to comply with police directives[,]" and in fact threatened the officers' safety.  *Rusfeldt v. City of Reading*, No. 23-1523, 2024 WL 2943771, at *5 n.3 (E.D. Pa. June 11, 2024) (cleaned up).

arrest.  ECF 62, p. 29.  But the Court concludes that, based on the video evidence, the degree of force used here was reasonable.

"[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, is constitutionally unreasonable."  *Whiting v. Bonazza*, 545 F. App'x 126, 130 (3d Cir. 2013) (cleaned up).  In an excessive force claim, "the standard is whether the police officer's actions were objectively reasonable in light of the facts and circumstances, regardless of the officer's intent or motivation."  *El*, 975 F.3d at 336 (cleaned up).  Courts in the Third Circuit consider several factors, including (1) the severity of the crime at issue; (2) whether the suspects pose an immediate threat to the safety of the officers or others; (3) whether they are actively resisting arrest or attempting to evade arrest by flight; (4) the physical injury to the plaintiff; (5) the possibility that the persons subject to the police action are themselves violent or dangerous; (6) the duration of the action; (7) whether the action takes place in the context of effecting an arrest; (8) the possibility that the suspect may be armed; and (9) the number of persons with whom the police officers must contend at one time.  *Id.*  Normally, this inquiry is reserved for the jury, but based on the video evidence, the Court concludes that no reasonable jury could find that Officer Orris's use of force was excessive.  *Wisneski v. Denning*, No. 12-864, 2014 WL 1758118, at *16 (W.D. Pa. Apr. 30, 2014) (Conti, J.).

Ms. Dumas challenges two applications of force: the initial shove by Officer Orris, and the takedown.  ECF 62, p. 29.  The Court addresses each in turn.

As depicted by the videos, Ms. Dumas rushed Officer Orris to film his badge number, inserting herself between him and several trash cans.  In doing so, she impeded his path forward and prevented him from deploying pepper spray if needed.  Indeed, Ms. Dumas testified that that was exactly her intention.  ECF 57-5, 29:5-11.  When Officer Orris instructed her to retreat, she took one step back, but then stopped

retreating given the obstructions behind her. *Id.* at 115:12-21. At this point, Officer Orris shoved Ms. Dumas in the chest.

Applying the factors enumerated above, the Court concludes that the shove was objectively reasonable. Though Ms. Dumas was not under arrest, she was, by her own admission, committing a crime—obstructing the performance of Officer Orris's official duties. Rushing up to a police officer creates the suspicion that the rusher may be violent or has an intent to harm the officer; indeed, Officer Orris knew that a firearm had been recovered just a few minutes before this encounter (ECF 57-9, 3:07-3:11), and so it would be natural to suspect that anyone in the parking lot, including Ms. Dumas, might threaten his safety. Ms. Dumas suffered no injury from the shove. ECF 57-5, 70:23-72:25 (Ms. Dumas detailing injuries she sustained from encounter, none of which involved injuries to her chest). The duration of the shove was minimal, only a fraction of a second. Officer Orris was contending with many juveniles in the parking lot, as he was attempting to get them to leave the area. ECF 57-10, 2:11-2:18. But Ms. Dumas's actions took his attention away from the performance of that duty to focus on her.

In all, the video shows that Officer Orris pushed Ms. Dumas—who, again, placed herself in this position—back to create space and carry out his official duties; the shove was a minimal intrusion given the circumstances, one that was brief and didn't hurt Ms. Dumas.[6] No reasonable jury could conclude that the shove was excessive under the circumstances.

The takedown, too, was reasonable. The officers began the takedown only after Ms. Dumas raised her right hand overhead in that threatening motion, suggesting

---

[6] Ms. Dumas repeatedly characterizes Officer Orris as "stalking," "trapping," and "walking her down into an ambush." ECF 62, pp. 23, 26, 29. Because the video contradicts that characterization, the Court need not credit it. For one, Ms. Dumas rushed Officer Orris and placed herself between him and the trash cans. Further, Ms. Dumas had an escape route from the position in which she placed herself to her

danger; as explained, the officers had probable cause to arrest Ms. Dumas for aggravated assault at this point. Thus, the takedown came about in effecting an arrest. The takedown itself was brief, lasting only five seconds. ECF 59-10, 2:19-2:24. The officers then took six seconds to flip Ms. Dumas onto her stomach. *Id.*, 2:24-2:30. The video shows that Ms. Dumas resisted arrest, including by kicking Officer Almusawi, and she admitted to resisting at her deposition. ECF 57-5, 51:20-23; ECF 57-9, 5:42-5:52; ECF 57-10, 2:25-2:36; ECF 57-13, 2:53-3:00; ECF 57-19, 4:21-4:23. Ms. Dumas suffered only minor injuries—pain and bruising that healed after two weeks. ECF 57-5, 74:2-5. Each of these facts is undisputed and weighs heavily in favor of finding no use of excessive force.

Ms. Dumas argues that a reasonable jury could believe her version of events because she "was not a threat to anyone" and "simply was not violent or dangerous in any capacity." ECF 62, p. 29. But her position ignores the key action in the sequence of events—the act of raising her arm overhead in a threatening motion, such that she could strike Officer Orris or Officer Almusawi. As soon as that happened, it became reasonable for the officers to perceive her as a physical threat, regardless of Ms. Dumas's actual intention to commit violence. And in the end, that's all the reasonableness test asks for. *Wisneski*, 2014 WL 1758118, at *11. Accordingly, the Court concludes that, based on the undisputed video evidence, no reasonable jury

---

right. ECF 57-9, 5:20-5:23. The officers only converged once Ms. Dumas refused to take that route, and instead stood her ground and raised her left hand up, which immediately preceded Officer Orris's shoving her. *Id.*, 5:24-5:26.

could find that Officer Orris used excessive force at any point during the events on July 2, 2022.

## <u>CONCLUSION</u>

For the reasons above, the Court concludes that Defendants are entitled to qualified immunity, and so will grant their motion for summary judgment in its entirety.  An appropriate judgment order follows.

DATED this 15th day of July, 2024.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge